IN THE MATTER OF STATE BOARD OF ACCOUNTS, ETC. ET AL. *v.* HOLOVACHKA ETC.

[No. 29,464. Filed May 7, 1957.]

566

*Edwin K. Steers,* Attorney General, and *George B. Jeffrey,* Deputy Attorney General, for appellant.

*Albert H. Gavit,* of Gary, as *Amicus Curiae,* for appellee.

ACHOR, C. J.—On June 15, 1955, the State Examiner of the State Board of Accounts, pursuant to §60-235, Burns' 1951 Repl. (Acts 1923, ch. 120, §1, p. 320), filed a report of examination and investigation with the Attorney General informing the Attorney General that his report and supporting testimony were to be presented to the grand jury of Lake County, Indiana, and that said report contained evidence that one Metro M. Holovachka might have committed certain criminal offenses with regard to certain public works and contracts during the time that he had been City Controller and Chairman of the Board of Public Works of the city of Gary. The examination and investigation was to ascertain whether or not a crime had been committed under §10-3713, Burns' 1956 Repl. (Acts 1905, ch. 169, §517, p. 584) and §48-1247, Burns' 1950 Repl. (Acts 1905, ch. 129, §46, p. 219; 1907, ch. 254, §1, p. 538), which prohibits a public officer to become financially interested in public contracts executed under his authority.

Under the statute it became the duty of the Attorney General ". . . to direct, supervise and assist in the prosecution of such crime or offense before such grand jury and in the courts . . ." §60-235, *supra.* It being a fact, Holovachka was then (and is now) the Lake County Prosecuting Attorney, the Attorney General thereupon requested him to disqualify himself in the case. The request was refused. The Attorney General then filed a verified application in the Lake Criminal Court for appointment of a special prosecutor, stating the fact of such prosecutor's personal interest in the case, the material allegation stated in the State Examiner's report, and citing the appropriate statutory authority for the action of the State Examiner and of the Attorney General. The appellee, Holovachka, filed a motion to dismiss the application, which motion was sustained. An appeal was then filed to this court.

The state bases its appeal on the ground that the dismissal of its petition for appointment of a special prosecutor constituted an abuse of discretion. On the other hand, appellee contends: (1) that the state has no authority to prosecute this appeal; (2) that the denial of the petition is not an appealable issue; (3) that the facts alleged did not constitute a criminal offense, and, therefore, the dismissal of appellee's petition was proper and did not constitute an abuse of discretion by the trial court, and (4) that no need exists for a special prosecutor.

At the outset, we are presented with the question as to the state's right to appeal this case. Appellee contends that the state cannot now prosecute this appeal because it was not a party to the action below; that it cannot be made a party to the action for the first time on appeal.

Appellee cites the fact that the verified application

for the appointment of a special prosecuting attorney, filed with the trial court, was captioned as follows:

"STATE OF INDIANA ⎫
COUNTY OF LAKE ⎬ SS:

IN THE CRIMINAL
COURT OF LAKE
COUNTY

IN THE MATTER OF STATE BOARD
OF ACCOUNTS, FIELD EXAMINER'S

REPORT NO. 97801"

and did not name the State of Indiana as party-plaintiff in the body of the application.

It was not necessary that the state be named plaintiff in the title of such proceedings. The case of *In re Darrow and Talbot* (1910), 175 Ind. 44, 92 N. E. 369, was captioned as follows:

"IN THE MATTER OF THE CHARGES AGAINST

LEMUEL DARROW AND JOHN W. TALBOT"

and this court held the title sufficient. Furthermore, although the salutation of the petition merely names the Attorney General and his deputy as bringing the action, the body of the application alleges facts sufficient to show that the state was the real party in interest in this case, and that the application was filed by the Attorney General acting in his official capacity and representing the State of Indiana under authority of §60-235, *supra*. Furthermore, following the submission of the case, the court made the following Order Book entry regarding the parties to the proceedings: "Comes now the *State of Indiana* by its Attorney General and comes also Metro M. Holovachka, Respondent, in his own proper person and by counsel, Albert Gavit, in open Court, and this cause is now submitted to the

Court. . . ." Appellee did not ask to have the record changed and, if the application was defective as originally filed, this court must assume that it was amended to conform to the facts as determined by the decree of the court.

The state is properly named as appellant under Rule 2-6 of this court, which requires all parties to the judgment seeking relief on appeal to be named as appellants in the assignment of errors. Therefore, we conclude that appellee's contention upon this issue is not well founded.

Appellee also contends that the facts presented to the trial court present no issue of law to this court, first, because no such right of action exists against a prosecuting attorney, and, secondly, if such right does exist, a determination as to such right rests solely within the discretion of the trial court.

Appellee bases his first contention upon the case of *Lake Co. Prop. Own.* v. *Holovachka, Pros. Atty.* (1954), 233 Ind. 509, 120 N. E. 2d 263, 121 N. E. 2d 721. In that case this court held that a citizens' committee had no right of action to have a special prosecutor appointed to investigate the alleged irregular acts of the regular prosecutor. However, a distinction exists between that case and the one here to be decided. The decision in that case was justified on the ground that the prosecuting attorney is an elected constitutional officer, with judicial authority over the prosecution of criminal cases arising within his jurisdiction. It is of public interest that he be free and untrammelled in the performance of his duties by persons who have no specific legal authority to inquire into or interfere with his judgment in the performance of his duties. However, a comparable situation does not exist as to the attorney general when a probable violation of the law is reported to him by the State

Board of Accounts affecting an official. The statute imposes a *duty* on the state examiner to present a report to the grand jury and for the attorney general to "direct, supervise and assist in the prosecution of such crime *or offense before such grand jury and in the courts . . .*" §60-235, *supra*.[1]

It must follow that the mandate of the statute carries with it the correlative duty for the Attorney General to maintain and carry the case to its intended conclusion, even though, in doing so, he may be required to contravene the prerogatives of the prosecutor himself, if the official misconduct, so reported to the grand jury, involves the potential indictment of the latter official.

We next consider appellee's contention that the appointment of a special prosecutor rests solely within the discretion of the court, and that from such exercise of discretion there is no appeal. As this court stated in the case of *State ex rel. Spencer* v. *Criminal Court, Marion Co.* (1938), 214 Ind. 551, 556-557, 15 N. E. 2d 1020, 16 N. E. 2d 888:

"... It cannot be doubted that, where it is established that the prosecuting attorney is an interested party, or otherwise clearly incapacitated, the court may appoint an attorney to represent the interests of the state. But this may not be done upon mere suspicion or rumor, and upon the mere ex parte motion of the judge, and the decisions dis-

---

1. "In any and all cases where any such report shall be filed with the attorney-general and such report discloses any crime or offense against the laws of the state of Indiana, it shall be the duty of the state examiner to present a certified copy of such report and competent testimony supporting the charges made therein, to the grand jury of the county in which the crime or offense shall have been committed, at its first convenient session and it shall be the duty of the attorney-general of the state of Indiana to direct, supervise and assist in the prosecution of such crime or offense before such grand jury and in the courts of such county having criminal jurisdiction thereof." §60-235, Burns' 1951 Repl.

close that in the cases where the appointment of a special prosecutor was upheld, the regular prosecutor had admitted disqualification or incapacity. The reasoning in the opinions would seem to clearly indicate that a special prosecutor may not be appointed to exercise the functions of the office over the objection of the regular prosecuting attorney, without a judicial determination of the fact of disqualification or interest after an opportunity for the regular prosecutor to be heard. . . ."

When we apply the reasoning of the above case to the facts before us, it follows that, although the application for appointment of a special prosecutor was addressed to and invoked the discretionary powers of the trial court, nevertheless the determination of the court must be consistent with the law when applied to the facts. *Lake Co. Prop. Own.* v. *Holovachka, Pros. Atty.* (233 Ind. 509), *supra*. The fact that a determination of the issue involves the discretion of the court does not preclude this court from reviewing the acts of the trial court for *abuse of discretion*. As heretofore stated by this court:

" . . . An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *The exercise of a lower court's discretion is not reviewable; it is only the alleged abuse of that power which is reviewable on appeal. . . .*" (Our emphasis.) *McFarlan* v. *Fowler Bank City Trust Co.* (1938), 214 Ind. 10, 14, 12 N. E. 2d 752.

This court has heretofore, on appeal and in original actions for writs of prohibitions, reviewed and passed upon the action of trial courts in appointing special prosecuting attorneys. In some instances this action has been approved. *State ex rel.* v. *Ellis* (1916), 184 Ind. 307, 112 N. E. 98; *Williams* v.

*State* (1919), 188 Ind. 283, 123 N. E. 209; *Perfect* v. *State* (1923), 197 Ind. 401, 141 N. E. 2d 52. In other cases the action was not approved. *State ex rel. Spencer* v. *Criminal Court, Marion Co.* (214 Ind. 551), *supra;* *State ex rel. Purcell* v. *Circuit Court* (1950), 228 Ind. 410, 92 N. E. 2d 843. From this, it must follow that the discretion exercised by a trial court with regard to the appointment of a special prosecuting attorney is not absolute but is subject to review and control by this court.

Under the issue so formed, it would be proper for the court, in the exercise of its discretion, to examine and determine the sufficiency of the allegations of the application. Here the information alleged facts which were purported to constitute a crime and the prosecutor's direct interest therein, and his resulting disqualification to act as prosecutor in the matter. These alleged facts were admitted by appellee's demurrer and motion to dismiss and, therefore, the question which this court must decide is whether or not the facts alleged, if true, constituted a crime, within the meaning of the statute. If they may have constituted a crime, the decision of the lower court in sustaining appellee's motion was "clearly against the logic and effect of the facts and circumstances before the court," and, therefore, constituted an abuse of discretion by the lower court which is reviewable by this court on appeal. *McFarlan* v. *Fowler Bank City Trust Co., supra.*

If the facts alleged constituted a crime, then the court could only have reached the decision it did by weighing the sufficiency of the evidence to be presented to the grand jury by the state examiner and deciding that the same would not warrant an indictment of the prosecutor. Under such circumstances, by so doing, the court would abuse its

discretion by invading the province of the grand jury in whom the power to determine such matters is vested at this state of the proceedings. Grand juries and prosecutors are vested with inquisitorial powers; judges are not. *State ex rel. Spencer* v. *Criminal Court, supra.* We conclude therefore that appellee's contention that the exercise of discretion by the trial court was not subject to appeal is not well founded.

However, if the information upon which this action is based did not allege facts which may have constituted a crime, then the sustaining of the demurrer was a proper exercise of discretion by the court and it would be the duty of this court to sustain the judgment of the trial court in the exercise of discretion. This brings us to the third major issue, upon which the parties are in sharp conflict. Obviously any consideration of the question requires a recital of both the facts alleged and the statutes applicable thereto. The essential facts alleged are in part as follows:

"(a) That one Metro M. Holovachka was during the year 1952 Controller of the said City of Gary and the President of the Board of Public Works and Safety of said City.

"(b) That on January 17, 1952, the said Board of Public Works and Safety awarded a contract in the amount of $18,536.00 to one Ray Giannini for the construction of district sewer No. 87; that the said Ray Giannini did, thereafter on the 7th day of July, 1952, in consideration of $1.00 and other valuable considerations, assign all his right, title and interest in and under said contract to the H. & M. Realty Company; that the assignment of said contract was presented to and approved by said Board of Public Works (and endorsed by Metro M. Holovachka, chairman) on July 7, 1952; that on October 15, 1952, the said H. & M. Realty Company was paid the sum of $12,931.34, on warrant No. 11791, by the County Treasurer, from monies realized and collected by the City of Gary through special assessments levied

on and against the properties benefited by district sewer No. 87 under and pursuant to the provisions of Primary Assessment Roll No. 5100 of the said City of Gary; . . ."

This paragraph is followed by paragraphs (c) and (d) which recite analogous facts regarding like contracts awarded for the construction of local sewers No. 225 and 226 by the city of Gary and assigned to H. & M. Realty Company, owned by appellee Metro M. Holovachka, with the approval of the Board of Works of which Holovachka was chairman.

The record shows that the amount of the various contracts and the amounts paid therefor by Holovachka for said contracts are as follows:

"DISTRICT SEWER NO. 87
    Monies due under contract         $18,536.00
    Consideration paid for assignment   16,082.50

LOCAL SEWER NO. 225:
    Monies due under contract        $ 7,181.50
    Consideration paid for assignment   5,744.80

LOCAL SEWER NO. 226:
    Monies due under contract        $17,411.00
    Consideration paid for assignment   13,928.80"

Section 517 of Ch. 169 of the Acts of 1905 (being §10-3713, Burns' 1956 Repl.) provides as follows:

"Any state officer, county commissioner, township or town trustee, mayor or a common councilman of any city, school trustee of any town or city, or their appointees or agents, *or any person holding any appointive power, or any person holding a lucrative office under the constitution or laws of this state, who shall,* during the time he may occupy such office or hold such appointing power and discharge the duties thereof, *be interested, directly or indirectly, in any contract for the construction of any* state house, court house, school house, bridge, public building or *work of any kind,* erected or built for the use of the state, or any county, township, town or city in the state, *in which he exer-*

*cises any official jurisdiction, or who shall bargain for or receive any percentage,* draw-back, premium, *or profit or money whatever, on any contract,* or for the letting of any contract, or making any appointment wherein the state, or any county, township, town or city is concerned, on conviction, shall be fined not less than three hundred dollars ($300) nor more than five thousand dollars ($5,000), and be imprisoned in the state prison not less than two (2) years nor more than fourteen (14) years, and disfranchised and rendered incapable of holding any office of trust or profit for any determinate period." (Our italics.)

Section 46 of Ch. 129 of the Acts of 1905 as amended (§48-1247, Burns' 1950 Repl.) provides as follows:

"No member of the common council or board of trustees, nor *any officer,* clerk, or deputy of such officer, or other employee *of any city or incorporated town of this state, shall, either directly or indirectly,* be a party to, or in *any manner interested in, any contract or agreement, either with such city or incorporated town,* or with any officer, board, clerk, deputy or employee of such city or incorporated town, for any matter, cause or thing *by which any liability or indebtedness is in any way or manner created or passed upon, authorized or approved* by such council or board of trustees or by any member thereof, *or by any officer,* board, clerk, deputy or employee of such city or incorporated town. Any contract in contravention of the foregoing provisions shall be absolutely void; and any person violating any of such provisions shall be fined not more than one thousand dollars ($1,000) and imprisoned in the state prison not less than one (1) year nor more than ten (10) years. No councilman or trustee or other officer, clerk, deputy or employee of any city or incorporated town shall, either directly or indirectly, purchase any bond, order, claim or demand whatsoever against such city or incorporated town, during his continuance in office or employment, for any sum less than the amount specified therein; and any bond, order, claim or demand so purchased by any such officer or other person in contravention of the foregoing

provisions shall be forfeited to such city or incorporated town, and no action shall ever be maintained thereon. Gifts and the acquirement of equitable interests by any such officers in any such bonds, orders, claims or demands shall be deemed to be within the meaning and scope of the foregoing provisions."

Upon the issue as to whether or not the acts of the appellee may have constituted a crime within the meaning of the above statutes, appellee contends first that the sewer construction contracts here involved were not "public contracts" and were, therefore, outside the purview of the above statutes. However, these contracts were for the construction of certain special or local public improvements, the construction of which public authorities were responsible for under the law. §§48-2701, 48-3901, 48-4001, Burns' 1950 Repl. With regard to such construction projects, the Gary Board of Public Works was required to (a) determine that certain sewers should be constructed; (b) adopt resolutions for the construction of said sewers; (c) enter into contracts for sewer construction work; (d) agree to pay for the construction work from funds raised by special assessments or from the sale of Barret Bonds; (e) adopt assessment rolls; levy and collect the assessments; issue Barrett Bonds, and (f) disburse the proceeds from said assessments and bonds by warrants drawn on the public treasury. In determining to construct these sewers the Board exercised a governmental power. *Edwards* v. *Cooper* (1906), 168 Ind. 54, 79 N. E. 1047.

In levying the special assessments the city exercises the sovereign power of taxation. *Read* v. *Beczkiewicz, Treas.* (1938), 215 Ind. 365, 18 N. E. 2d 789.

A special or local assessment is justified and authorized only by, and would be unconstitutional and invalid

without, a special benefit to the property assessed, resulting from a special or local *public improvement*. 48 Am. Jur., *Special or Local Assessments*, §21, p. 580. Further, and if, as appellee contends, the city was acting as statutory agent for the affected property owners, nevertheless the contracts herein must be public contracts, as the city can exercise only a governmental function and cannot become involved in a private business transaction.

In summary, the contracts herein were entered into by public authorities in the exercise of a governmental power for the construction of public improvements and, therefore, these contracts can only be "public contracts," as defined by the act.

Next, appellee maintains that the report of the state examiner cannot go to the grand jury because it shows no fraud, collusion, misconduct or negligence in letting or performance of these contracts, or any loss to the municipality. A decision upon this issue is not necessary. The statute does not limit its application to circumstances of fraud or loss to the city. However, in this case the state examiner's report shows that Metro M. Holovachka, the City Controller and President of the Gary Board of Works, informed all contractors that they should bid on these projects as he had clients who would buy up their contracts at a *discount,* but he would expect them to assign all of their contracts with him—not assigning their bad contracts and keeping the better ones for themselves.

The state examiner's report also shows that Holovachka's "client" for the purchase of these contracts was the H. & M. Realty Company and that the contracts were thereafter assigned by the sewer contractors to the H. & M. Realty Company at a discount with the approval of the Board of Works, entitling the "Company" to a profit on the transaction.

Significantly the state examiner's report reveals that Metro M. Holovachka's "client" turned out to be, in fact, Holovachka himself, doing business under the name and style of H. & M. Realty Company.

The report further shows that the assignment made by the several contracts to the H. & M. Realty Company (Holovachka) were made prior to the engineers' final estimates and the adoption of the primary assessment rolls and the subsequent confirmation of such assessment rolls; that they were consented to by Holovachka as a member of the Board of Works and were acknowledged by him as City Controller. These circumstances do not exclude the possibility of fraud which may have resulted in loss to the city.

In any event the state examiner's report contains facts which should be presented to the grand jury since public officers are prohibited by law from receiving any percentage or profit or money whatever on, or being interested directly or indirectly in public contracts passed upon and entered into under their jurisdiction and authority. §§10-3713 and 48-1247, *supra*.

Appellant also asserts that §10-3713, *supra*, applies only to buildings, etc. "built for the use of the city," that a district sewer is not "built for the use of the city" but instead is for a few benefited property owners and, therefore, that there was no violation of the section of the act. The contention is not sustained by the facts. A sewer is a drain or passage for the purpose of carrying off water, filth and excreta, and even though these sewers were local and district sewers, they were public improvements and benefited the entire community. McQuillen, *Municipal Corporations*, Third Ed., §31.01 *et seq. Prott* v. *Gary* (1931), 94 Ind. App. 37, 43-45, 175 N. E. 243.

Appellee further asserts that §48-1247, *supra*, is not applicable for the reason that the contracts as assigned

were not "with the city" within the meaning of statute; that Barrett Law contracts are not contracts with the city, but are only of benefit to property owners through the city as their enforced statutory agent. In support of this contention appellee cites the case of *Aetna Trust Co.* v. *Nackenhorst, Rec.* (1919), 188 Ind. 621, 630, 122 N. E. 421, 123 N. E. 353, 125 N. E. 213. However, the Nackenhorst case does not sustain such a contention. To the contrary, the court in describing the contract stated: "The assignment was made upon a valid consideration after the contractor had entered into a valid and binding *contract with the city.*" (Our emphasis.) Neither do other authorities cited by appellee sustain his contention upon this issue.

Appellee also asserts that §48-1247, *supra,* does not prohibit city officers from becoming interested in city contracts after the execution of the contract, citing *Finn* v. *State* (1917), 66 Ind. App. 432, 114 N. E. 9; *Kerr* v. *State* (1917), 65 Ind. App. 102, 116 N. E. 590, and *State* v. *Green* (1935), 207 Ind. 583, 194 N. E. 182.

The Finn and Kerr cases, *supra,* both involved a city councilman who had sold supplies and materials to a general contractor who was performing certain work under a contract with the city. The court held only that §48-1247, *supra,* was limited to contracts between the general contractor and the city and that a contract between a materialman and the general contractor did not, in the absence of fraud, fall within the meaning of the statute.

Likewise, in *State* v. *Green, supra,* the court held that an indictment was insufficient when it was not alleged how or in what manner a city councilman "might have become interested in the contract" after its execution, stating that he might have been interested merely as a workman for the contractor.

Those cases are not applicable to a situation where, as here, a public officer informed all the contractors that they should bid on the sewer projects as he had clients who would buy up their contracts at a discount and then, after having himself passed upon said contracts as a public officer, became directly interested therein as the result of an assignment of the proceeds of the contracts to himself at a discount by which he realized a personal profit on each transaction.

Rather, the reasoning of the court in *Cheney* v. *Unroe* (1906), 166 Ind. 550, 553, 77 N. E. 1041, would appear in point here:

". . . 'It is a well-established and salutory doctrine,' . . . 'that he who is entrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based on principles of reason, or morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well-regulated system of jurisprudence prevails.' 1 Dillon, Mun. Corp. (4th ed.), §444. . . ."

Appellee cites the fact that the last sentence of §48-1247, *supra,* prohibits city officers from purchasing claims against the city for less than the amount specified therein, and asserts that this provision necessarily implies that appellee, as such officer, could properly purchase the contracts here in question for the face value. However, this provision is merely a further limitation regarding financial transactions of city officials with the city. It cannot be construed as authorizing or legalizing the acts of appellee, as outlined above, in view of the specific statutory prohibitions against a public officer receiving a profit, percentage, or any money whatsoever, or being interested

directly or indirectly in any public contract *executed or passed upon under his jurisdiction or authority.* §10-3713, *supra,* §48-1247, *supra.* Furthermore, we are confronted by the fact that appellee *discounted* each of the contracts in question by more than 16 per cent "less than the amount specified therein."

Finally we consider appellee's contention that there is no necessity for the appointment of a special prosecutor to present the matter to the grand jury. In support of this contention appellee cites the fact that the statute (§60-235, *supra*) authorizes the Attorney General to "direct, supervise and assist" in the prosecution of such crimes or offenses before such grand jury and in the courts of such county having criminal jurisdiction thereof. Appellee contends that this statute gives the Attorney General complete authority to proceed with the prosecution of the case before the grand jury, independent of the prosecuting attorney. The answer to this issue lies in the authority of the respective offices as it exists by constitutional prerogative and statutory declaration. In Indiana the Attorney General is a statutory officer, exercising only the authority granted by statute, whereas the office of prosecuting attorney is a constitutional office, carved out of the office of the Attorney General as it existed at common law. *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 596, 602-605, 99 N. E. 2d 839; *State ex rel.* v. *Ellis* (184 Ind. 307), *supra.* Therefore, the general authority for the prosecution of criminal cases rests in the prosecuting attorney, and the authority of the Attorney General exists only as defined by statute.

With regard to duties of the prosecutor, the statute reaffirms the constitutional duties of the prosecutor by stating that he shall "conduct *all* prosecutions for felonies or misdemeanors" "within their respective jurisdictions." (Our italics.) §49-2504,

Burns' 1951 Repl. They also provide that: "The prosecuting attorney or his deputy shall be allowed at all times to appear before the grand jury, for the purpose of giving information . . . or advice upon any legal matter when required; . . . §9-826, Burns' 1956 Repl. However, as heretofore stated, Section 60-235, *supra*, merely provides that the Attorney General shall "direct, supervise and assist" in the prosecution of such actions. This language can only be construed to mean that his activity shall be in co-operation with, and not independent of the prosecuting attorney, who is charged with the responsibility of conducting *all* prosecutions within his jurisdiction.

Therefore, upon proof of the personal involvement of the prosecutor in the proceedings before the grand jury and of his refusal to disqualify himself, as admitted by appellee's motion to dismiss, it became incumbent upon the court to order such prosecutor disqualified from such proceedings and to appoint a disinterested person in his place. See *State ex rel. Spencer* v. *Criminal Court, Marion Co., supra; State ex rel.* v. *Ellis, supra.*

Judgment is therefore reversed, with instructions for the trial court to overrule appellee's motion to dismiss and to further proceed herein, consistent with this opinion.

Arterburn and Landis, JJ., concur.

Emmert, J., concurs in result. Bobbitt, J., dissents.

NOTE.—Reported in 142 N. E. 2d 593.