**DELAWARE WOMEN'S HEALTH ORGANIZATION, INC., Barbara L. Fishel, Susan Hill and John F. MacGuigan, M.D., Plaintiffs,**

v.

**Richard R. WIER, Jr., Attorney General of the State of Delaware, Defendant.**

Civ. A. No. 77–87.

United States District Court,
D. Delaware.

Oct. 6, 1977.

498

Roger Sanders of Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiffs; Frank Susman of Susman, Schermer, Willer & Rimmel, St. Louis, Mo., of counsel.

James F. Bailey, Asst. Atty. Gen., Dept. of Justice, Wilmington, Del., for defendant.

MURRAY M. SCHWARTZ, District Judge.

The question presented is whether under the facts of this case a federal court has the requisite jurisdiction to declare unconstitutional certain Delaware abortion statutes [1] as applied to the termination of pregnancy by women in consultation with their duly licensed physicians.

Subchapter VIII [2] of Chapter 17 of 24 Del.C., the operative Delaware abortion statutes, was passed by the Delaware Legislature in 1969.[3] These statutes were largely patterned after the ALI Model Penal Code § 230.3.[4] In 1973, the Supreme Court in *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), struck down as unconstitutional similar Georgia statutes. Specifically, the Supreme Court held that failure of the state enactment to exclude the first trimester of pregnancy was invalid under *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The Delaware statutory scheme suffers from the same deficiency. Further, in *Doe v. Bolton, supra,* the Court struck down as unconstitutional a less onerous residency requirement than that found in the Delaware statute and three procedural demands also found in whole or part in the Delaware statute: (1) that the abortion be performed in a hospital accredited by the Joint Commission on Accreditation of Hospitals; (2) that the procedure be approved by the hospital staff abortion committee; and (3) that the performing physician's judgment be confirmed by the independent examinations of the patient by two other licensed physicians.[5]

On April 12, 1973, in response to *Roe v. Wade, supra,* and *Doe v. Bolton, supra,* the Office of the Attorney General of the State of Delaware issued an opinion [6] that many of the Delaware abortion statutes were unconstitutional. During the same year, the Hospital Abortion Review Authority of the Wilmington Medical Center disbanded, and the Wilmington Medical Center ceased filing abortion reports as required by the Delaware abortion statutes.[7] In the interven-

---

1. 11 Del.C. §§ 651, 652, 653, 654 and 24 Del.C. §§ 1766, 1790, 1792 and 1793.

2. §§ 1790–93.

3. 24 Del.C. § 1790 was amended in 1970 to lower from 19 to 18 the age after which parental consent to an abortion was no longer required.

4. *See Roe v. Wade,* 410 U.S. 113, 140, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

5. The Delaware statute requires confirmation of the decision to abort by one independent physician. 24 Del.C. § 1790(b)(2).

6. Doc. 5.

7. Doc. 7—Affidavit of Norman L. Cannon, M.D. Although there are other hospitals in both the Wilmington, Delaware, area and the State of Delaware, the Wilmington Medical Center can safely be described as one of the major providers of hospital care in Delaware.

ing four years and to the present date, the State has not prosecuted, nor has threatened any prosecution of the Wilmington Medical Center or any member of the defunct Hospital Abortion Review Authority. Moreover, nothing has been brought to the attention of the Court to indicate the State has threatened any prosecution against any licensed institution or physician for the performance of abortions in violation of the Delaware statutes.

Notwithstanding the Attorney General's opinion and the absence of any abortion prosecution counter to the teachings of *Roe v. Wade, supra,* and *Doe v. Bolton, supra,* the corporate plaintiff and two individual plaintiffs filed a complaint for injunctive relief against enforcement of the Delaware statutes and a declaratory judgment that the Delaware abortion statutes as applied

to physicians are unconstitutional. The corporate plaintiff is a Florida concern engaged in the business of providing first trimester abortion services, while individual plaintiffs Fishel and Hill are respectively a vice-president and an administrative employee of the corporation. MacGuigan, a doctor who regularly performs abortions and is Medical Director of plaintiff corporation, was added as a party plaintiff to obviate a potential standing problem.[8]

On March 24, fourteen days after the complaint was filed, the request for injunctive relief was withdrawn and the Attorney General of the State of Delaware issued a statement of policy[9] reaffirming the 1973 opinion of his office and specifically undertaking not to prosecute for violations of the Delaware abortion statutes previously considered unconstitutional:

**8.** *Cf. Doe v. Bolton, supra,* 410 U.S. at 187–89, 93 S.Ct. 739 (indicating that physicians against whom abortion statutes may operate possess standing to challenge the statutes, although declining to resolve the standing question for nurses, clergy, social-workers and corporations).

**9.** Doc. 5. The statement of policy in letter form reads as follows:

"This letter is a statement of policy with regard to enforcement of the Statutes challenged by Plaintiffs in the above styled Action.

"Subsequent to *Roe v. Wade,* 410 U.S. 113 [93 S.Ct. 705, 35 L.Ed.2d 147] (1973) and *Doe v. Bolton,* 410 U.S. 179 [93 S.Ct. 739, 35 L.Ed.2d 201] (1973), this Office was asked to state its position with regard to enforcement of the Delaware abortion statutes. Accordingly, Att.Gen.Op. 73–030 (1973) was issued which stated that many portions of the Delaware abortion law were unconstitutional in light of *Roe* and *Doe, supra.* Specifically, this Office ruled that most of the provisions of Title 24 of the Delaware Code that Plaintiffs seek to have enjoined appeared to be unconstitutional. Having so ruled, this Office is not now in a position to enforce these provisions. While Opinions of the Attorney General are not binding and do not have the force of law in certain areas, the Opinion of the Attorney General to prosecute or not to prosecute a criminal case is binding and final. Such a decision is not merely advisory.

"Although 11 *Del.C.* §§ 651, 652, 653 and 654 were not specifically discussed by our

Opinion, these Sections are also unenforceable. We ruled that 24 *Del.C.* § 1790 appeared to be unconstitutional. That Section provides that no abortions or abortion services are permissible unless necessary to save the life of the mother or at certain other times. Thus, almost all abortions except those necessary to save the life of the mother were prohibited by 11 *Del.C.* §§ 651, 652, 653 and 654. Having ruled that such a prohibition in 24 *Del.C.* §§ 1790, *et seq.* was unconstitutional, we must hold the aforementioned Sections of Title 11 to be unconstitutional. With the exceptions noted below, we will not prosecute for violations of these Sections of Title 11. We have not enforced these Sections since *Roe v. Wade, supra* and *Doe v. Bolton, supra.*

"In summary, the Department of Justice will not prosecute for violations of 11 *Del.C.* §§ 651, 652, 653 and 654, nor will the Department prosecute for violations of 24 *Del.C.* §§ 1766, 1790, 1792, and 1793. We will not prosecute for failure of a minor to obtain consent pursuant to 13 *Del.C.* § 708 (Supp. 1976) and/or 24 *Del.C.* § 1790.

"However, this Office has and will prosecute those non-physicians and/or non-medically trained persons who perform abortions as such prosecutions continue to be constitutionally enforceable. *Connecticut v. Menillo,* 423 U.S. 9, 10 [96 S.Ct. 170, 46 L.Ed.2d 152] (1975).

"This Office will actively draft new legislation to comport with case law on state regulation of abortions and will enforce those laws." [Footnotes omitted.]

"In summary, the Department of Justice will not prosecute for violations of 11 *Del.C.* §§ 651, 652, 653 and 654, nor will the Department prosecute for violations of 24 *Del.C.* §§ 1766, 1790, 1792 and 1793. We will not prosecute for failure of a minor to obtain consent pursuant to 13 *Del.C.* § 708 (Supp.1976) and/or 24 *Del.C.* § 1790."

At oral argument held on September 23, 1977 on defendant's Motion to Dismiss and plaintiffs' Motion for Summary Judgment, the parties were in the unusual posture of being in complete agreement on the merits as to the unconstitutionality of the challenged legislation. Their sole difference was whether under the facts as described a federal court has jurisdiction to grant the requested declaratory relief.

■■■ Pursuant to Article III, Section 2 of the United States Constitution, federal courts are of limited jurisdiction. As a prerequisite to exercise of federal jurisdiction there must be present a case or controversy within the meaning of Article III, Section 2. The case or controversy requirement is also expressly required by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.[10] The issue then becomes whether the requisite case or controversy is present in a challenge to the constitutionality of state legislation when the defendant, the chief law enforcement officer of the state, concedes that the statutes are unconstitutional and expressly undertakes not to enforce them. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), strongly implies that a meaningful possibility of enforcement must exist: "[f]ederal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute . . . ." *Id.* at 475, 94 S.Ct. at 1223–24.

Because defendant has conceded that the Delaware abortion statutes as applied to physicians are unconstitutional and has adopted a policy of non-enforcement, plaintiffs acknowledge that they cannot point to a disputed criminal statute nor can they find a threat of enforcement sufficient under *Steffel v. Thompson, supra,* to confer jurisdiction to grant the requested declaratory relief. Instead, plaintiffs urge that the *Steffel v. Thompson* requirement of a genuine threat of prosecution is not applicable to abortion cases. Plaintiffs reason that the mere existence of the abortion statutes coupled with the high emotional fervor generated by those opposed to a liberalized view of abortion subject them to an unreasonably high degree of exposure to prosecution as a result of an ad hoc future decision to prosecute by this defendant or his successor. Plaintiffs further rely upon *Arnold v. Sendak,* 416 F.Supp. 22 (S.D.Ind.1976), *sum. affd.,* 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976); *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); and *Doe v. Bolton, supra,* as compelling a conclusion that abortion cases are not subject to the *Steffel v. Thompson* requirement of being exposed to a genuine threat of enforcement of a disputed state law.

Plaintiffs' contention that abortion cases are deserving of special jurisdictional treatment and consideration misapprehends the reason for the *Steffel v. Thompson* requirement of a genuine threat of prosecution. Analytically, that requirement in the context of state criminal law enforcement is necessary to assure fulfillment of the Article III command that a genuine case or controversy exists as a prerequisite to the exercise of federal jurisdiction. "[T]he mere existence of a state penal statute would constitute insufficient grounds to support a federal court's adjudication of its

---

**10.** Section 2201 provides:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

constitutionality in proceedings brought against the State's prosecuting officials if real threat of enforcement is wanting." *Poe v. Ullman,* 367 U.S. 497, 507, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961). "If the prosecutor expressly agrees not to prosecute, a suit against him for declaratory relief . . . is not such an adversary case" as will support Article III jurisdiction. *Id.* Plaintiffs' speculative fears of future prosecution fueled by citizenry reaction to abortion cannot fill the jurisdictional void caused by the absence of a justiciable case or controversy.

Plaintiffs' case authority is similarly unavailing. Read most favorably to plaintiffs, *Arnold v. Sendak, supra, Planned Parenthood of Central Missouri v. Danforth, supra,* and *Doe v. Bolton, supra,* stand for the proposition that the failure of a prosecutor to prosecute or the silence of a prosecutor in the face of a background of recently enacted state abortion statutes is insufficient to deprive a federal court of the requisite Article III case or controversy. In the instant matter, the critical distinction is that the chief law enforcement officer of the State of Delaware has affirmatively undertaken not to enforce the Delaware abortion statutes as applied to physicians. This affirmative commitment is manifested by an opinion of the Attorney General, issued well before this civil action was instituted, acknowledging the probable unconstitutionality of the state abortion statutes; by the absence of any prosecution under the challenged state laws for a number of years; by a comprehensive statement of policy in letter form issued after commencement of this action detailing the unconstitutional aspects of the Delaware enactment and specifying that the Attorney General would not prosecute under the designated state abortion laws; by the inclusion within that statement of notice that the Attorney General would actively draft new legislation to comport with current case law; and by the widespread distribution of the statement to law enforcement officials within the State of Delaware.

It is concluded plaintiffs' application for declaratory relief must be dismissed for want of federal jurisdiction.