**WEST SIDE WOMEN'S SERVICES, INC., et al., Plaintiffs,**

v.

**CITY OF CLEVELAND et al., Defendants.**

No. C77–1112.

United States District Court, N. D. Ohio, E. D.

March 1, 1978.

Sheldon Berns, Michael Diamant, of Kahn, Kleinman, Yanowitz & Arnson, Cleveland, Ohio, for plaintiffs.

Karen Newborn, Sharmon Sollitto, Asst. Directors of Law, City of Cleveland, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Plaintiffs, a physician and a clinic corporation, have rented facilities for use as an abortion clinic on the west side of Cleveland in an area zoned for "local retail business." Professional medical offices are permitted in these districts by the City zoning ordi-

nances. On June 18, 1977, the City Council passed, as an emergency measure, section 231.09 of the Codified Ordinances of the City of Cleveland, entitled "Prohibition Against Issuing Abortion Service License in Local Retail District." Section 231.09 is a part of Chapter 231 of the Codified Ordinances, which regulates abortion services and sets licensing standards.

At the time section 231.09 was passed and signed into law by the Mayor, plaintiffs had obtained a lease on the premises and had secured a zoning permit for the desired use. They had not requested a license to open an abortion clinic as required by Chapter 231.

■ Plaintiffs allege that the actions of defendants contravene plaintiffs' rights under the due process and equal protection clauses of the fourteenth amendment by preventing plaintiff, Dr. Derman, from treating patients and by causing economic damage to plaintiff clinic, West Side Women's Services, in contravention of the Supreme Court's decisions in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), *Sendak v. Arnold*, 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976), and *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). In addition, plaintiffs raise the privacy rights of prospective patients who they allege will be emotionally and financially damaged by being denied medical care or being required to seek alternatives to abortion. Such harm, plaintiffs allege, will be irreparable, entitling them to preliminary injunctive relief. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1974). The federal questions thus raised give this Court jurisdiction under 28 U.S.C. §§ 1331, 1343.

Defendants argue that the ordinance in question does not interfere with a fundamental constitutional right, and thus must be judged by a rational basis test. Using such a test, defendants allege that the ordinance is a proper exercise of police power by the city. According to defendants, the economic harm claimed by plaintiffs is not irreparable, and does not entitle plaintiffs to preliminary injunctive relief.

The pleadings and briefs raise no question of fact, only a question of law.

■ Defendants do not dispute that at least Dr. Derman has standing to raise the privacy rights of his patients. *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). If defendants' actions interfere with a fundamental constitutional right of either plaintiffs or their patients, those actions must be taken in furtherance of a compelling state interest. If there is no such infringement, however, defendants' actions must be judged on the basis of their rational relationship to a legitimate state interest.

■ In its recent decisions on the abortion issue, the Supreme Court has isolated two fundamental rights derived from the right to privacy which are constitutionally protected from state interference. In the first trimester of pregnancy, the state cannot interfere with either the abortion "decision" or with the "physician-patient relationship" unless there is a "compelling" countervailing state interest. *Singleton, supra*, 428 U.S. at 81, 96 S.Ct. 2868. Not all distinction between abortions and other medical procedures is forbidden. *Id.* at 149, 96 S.Ct. 2868.

■ In *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), the Supreme Court recognized a legitimate state interest in promoting live births over abortions as an alternative method of dealing with pregnancy.

> *Roe v. Wade* . . . did not declare an unqualified "constitutional right to an abortion" . . . Rather, the right protects the woman from *unduly burdensome interference* with her freedom to decide whether to terminate her pregnancy. It implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion . . . ..

*Id.*, 432 U.S. at 473, 97 S.Ct. at 2382 (emphasis added). Defendants' decision to permit professional medical offices to operate in local retail business districts, but to deny abortion clinics that right, appears to be consonant with such a "value judgment." Therefore, the ordinance can be said to bear a rational relationship to a legitimate state interest. *Cf., Planned Parenthood v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).

The decision to ban abortion clinics from certain areas of the City does not "unduly burden" either the abortion decision or the physician-patient relationship. Women who wish to obtain abortions have access to services in other areas of the City. That such services exist is shown by the list included in the affidavit of Joyce E. Redon (defendants' Exhibit "B"). This is a different case from those relied upon by plaintiffs in which abortion clinics were effectively banned from an entire political subdivision. *See, e. g., Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir., 1977) (city passed moratorium on building of abortion clinic which would have been a unique facility in city); *Framingham Clinic, Inc. v. Board of Selectmen of Southborough*, 367 N.E.2d 606 (Mass.Sup.Jud.Ct.1977) (abortion clinics declared prohibited use for entire town); *Kennan v. Nichol*, 326 F.Supp. 613 (W.D.Wis.1971), *aff'd* 404 U.S. 1055, 92 S.Ct. 735, 30 L.Ed.2d 743 (1972) (statute required all abortions to be performed in "licensed maternity hospital").

Nor does the portion of the abortion ordinance in question, section 231.09, attempt to regulate the method of providing first trimester abortions or the type of facilities which may be used, as did the Indiana statute held unconstitutional in *Sendak v. Arnold*, 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976), *affirm'g* 416 F.Supp. 22 (S.D.Ind.), and the Youngstown statute in *Mahoning Women's Center v. Hunter*, 444 F.Supp. 12 (N.D.Ohio, 1977).

■ Neither do plaintiffs have a fundamental right to perform abortions. Assuming plaintiffs do have a fundamental right to "property," *i. e.*, running a business, pursuant to the fourteenth amendment, that right is no more abridged by this ordinance than by any zoning law. Plaintiffs do not seriously question defendants' authority to restrict certain uses to appropriate areas of the City. Plaintiffs are not prevented from

treating their patients—they are only restricted as to the location of their facilities.

Thus, plaintiffs fail to meet the primary requirement for granting a preliminary injunction—probability of success on the merits. *Virginia Petroleum Jobbers Ass'n v. FPC*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). This failure makes it unnecessary to consider the other issues raised by plaintiffs' Motion.

IT IS THEREFORE ORDERED that plaintiffs' Motion for Preliminary Injunction be denied.